IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:12-CV-81202-WILLIAMS/BRANNON

NESTLÉ HEALTH SCIENCE - PAMLAB, INC.
AND BRECKENRIDGE PHARMACEUTICAL, INC.

        Plaintiffs,

v.

VIRTUS PHARMACEUTICALS, LLC

        Defendant.
_____/

**DEFENDANT VIRTUS PHARMACEUTICALS, LLC'S (CORRECTED) OMNIBUS
MOTION IN LIMINE TO EXCLUDE OR IN THE ALTERNATIVE LIMIT
VARIOUS EVIDENTIARY MATTERS**

Defendant, VIRTUS PHARMACEUTICALS, LLC ("Virtus" or "Defendant"), by and

through its undersigned attorneys, hereby moves this Court for an Order excluding the following:

1. Any use by Plaintiffs of the following pejorative, misleading, and argumentative terms:

imposter; authorized generic; unauthorized; generic; unqualified manufacturer; any reference to

D-Methylfolate as a contaminant or impurity.

2. Any comment by witnesses or counsel concerning the nationality of the companies or

individuals who are involved as Virtus's suppliers or manufactures.

3. Any comment, testimony or documentary evidence stating that consumers and/or

pharmacists believe product labels are supported by "scientific testing"

4. Any expert opinion testimony from lay witnesses where Plaintiffs have not provided a

disclosure as is required by Fed. R. Civ. P. 26(a)(2)(C).

5. Any evidence, testimony or argument concerning the alleged patient safety concerns with

Virtus' products or the potential efficacy of Plaintiffs' products in treating medical conditions.

6.  Any evidence, testimony or argument regarding variances or errors made by Virtus' or its manufacturers which is unrelated to L-Methylfolate or the claims at issue.

7.  Any evidence, testimony or argument that Virtus' products do not meet the shelf-life claims on the label.

8.  Any evidence, testimony or argument Virtus products have too much D-Methylfolate or too much L-Methylfolate.

9.  Any evidence, testimony or argument regarding any regulatory complaints against Virtus or its manufacturers.

10. Any evidence, testimony or argument regarding tests performed by third parties that have not been identified as experts in the matter or test report that have not been properly admitted into evidence.

11. Any evidence, testimony or argument regarding alleged reputational harm suffered by Plaintiffs.

12. Any reference or comment to the jury describing the contents of a document before the document been properly admitted into evidence.

13. Any attempt by Plaintiffs to offer testimony or argument regarding Virtus' products, except the six lots tested for which Plaintiffs have produced evidence of testing.

Pursuant to Federal Rules of Evidence and for the reasons set forth in the incorporated Memorandum in Support of this Motion, Defendant, Virtus, moves this Court to exclude, or in the alternative, limit the testimony as set forth herein.

WHEREFORE Defendant Virtus respectfully requests that this Court enter an Order excluding all of the above mentioned evidentiary materials and granting all other such relief as is just and appropriate.

<u>**INCORPORATED MEMORANDUM OF LAW**</u>

***1.  Any use of the pejorative terms: imposter; unauthorized; generic; unqualified manufacturer; reference to D-Methylfolate as a contaminant or impurity***

Courts should prohibit the use of pejorative terms under Fed. R. Evid. 403 when the terms are "inflammatory and unnecessary to prove a claim." *Plew v. Ltd. Brands, Inc.*, 2012 WL 379933 *2 (S.D.N.Y. 2012). These terms are unnecessary for Plaintiffs to prove a claim and if they are used there is a great risk the jury will be prejudiced.

*a. The pejorative term "imposter"*

Pejoratives should be prohibited at trial, because they only seek to prejudice the jury and serve no legitimate purpose. *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, (LMM), 2002 WL 31655287 (S.D.N.Y. 2002). Plaintiffs, during depositions taken of their employees and in related documents, describe their competitors, such as Virtus, as "imposters." The term "imposter" is a pejorative word. It carries negative connotations, would only operate to prejudice the jury, and has no legitimate purpose. This would be akin to allowing the Government in a criminal case to describe the defendant as a criminal rather than by name. Thus, it should be excluded by this Court.

*b. The pejorative, ambiguous, and argumentative terms "unauthorized" or "unauthorized generic"*

These are highly prejudicial terms and should be barred from use by Fed. R. Evid. 403. When a term implies some type of illegal or inappropriate behavior that term should be excluded because of the potential prejudice. *Highland Capital Mgt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 192 (S.D.N.Y. 2008). Because the term "unauthorized" implies the absence of permission, it is likely this term could confuse the jury in believing permission is needed either from the government or the brand-name manufacturer in order to create a "generic" dietary supplement. That is simply not the case. In fact, according to the FDA "dietary supplements do not require

FDA approval to be sold in the United States."[1] Therefore this term should be excluded.

   *c. The misleading and argumentative term "authorized generic"*

   Plaintiffs will likely argue that Virtus entered the dietary supplement market in unfair competition to Plaintiff, Breckenridge Pharmaceuticals, which Plaintiffs declare is the "authorized generic." This characterization is misleading to the jury and prejudicial to the defendant. This term falsely implies some type of FDA-approval, which has not been obtained. In fact, the term "authorized generic," as defined by the FDA, is a drug that has been approved by the FDA. 21 C.F.R. § 314.3. Even Plaintiffs themselves have argued in previous litigation that the term "authorized generic" falsely implies that the product has obtained FDA-approval. (Complaint filed by Breckenridge [attached as "Exhibit 1"]). Thus, the term "authorized generic" should be excluded from use at trial.

   *d. The misleading and confusing term "generic"*

   This term is both prejudicial and potentially confusing to the jury. The term "generic" immediately conjures up an idea of a generic prescription drug that is regulated by the Food and Drug Administration and not, as applicable in this case, a vitamin that is not regulated similarly. The actual term "Generic Drug" is a term defined by the FDA and only applies to FDA approved drug products. "A 'generic drug' product is a 'drug' within the meaning of § 201(g)(1) of the Act." *United States v. Generix Drug Corp.*, 460 U.S. 453, 461 (U.S. 1983). The FDA does not have a separate definition for "generic" and only has a definition for "generic drug." However, none of these requirements apply to vitamins. Using the word "generic" will cause confusion for the jurors because a generic dietary supplement is not a "generic drug" as defined by the FDA. Dietary supplements are treated completely different by the FDA and those supplements that are "generic"

---

[1] U.S. Food and Drug Administration. Drugs@FDA.
http://www.fda.gov/Drugs/InformationOnDrugs/ucm075234.htm#suppl

do not always have the same active ingredients in the same strengths as a brand dietary supplement. Wechsler Depo, Pg. 78, Ln 14-24. Pg. 83, Ln 2-12. Pg. 90, Ln 5-13. Pg. 91, Ln 21; Pg. 92, Ln 1-20; Pg 108, Ln 22-Pg 109, Ln. 8; Pg. 110, Ln. 5-10. *Pamlab LLC v. Seton Pharms., LLC*, 2010 U.S. Dist. LEXIS 128819 (S.D.N.Y. Dec. 6, 2010). Thus, this Court should exclude any use of the word generic.

   *e. Reference to D-Methylfolate as a contaminant or impurity*

   This Court should exclude any pejorative reference to the presence of D-Methyfolate in Virtus' products or any reference to D-Methylfolate as a "contaminant" or "impurity." Again, these terms are prejudicial, have no probative value, and are actually false statements. As Plaintiffs own complaint states, the "D" form of the compound is not a contaminant or an impurity, it is merely a "therapeutically ineffective" form of the compound and is "of no benefit to humans." (Second Amended Complaint Pg. 3-4). There has been no evidence submitted that the "D" form is harmful. In fact, Plaintiffs even admit their own products contain the "D" form of the compound. To characterize the "D" form of the same Methylfolate compound, as a contaminant or impurity is prejudicial, an emotional appeal, a factual misstatement, and is not allowed under the Rules. Fed. R. Evid. 403; *A.I.A. Holdings*, 2002 WL 31655287 (S.D.N.Y. 2002). Thus, this Court should exclude any pejorative reference to the "D" form of Methylfolate.

   **2.  *Any comment by witnesses or counsel concerning the nationality of the companies or individuals who are involved as Virtus's suppliers or manufactures***

This Court should exclude any comment or reference to the jury concerning Virtus' suppliers or manufacturers that places emphasis on the nationality of the company in an attempt to imply poor quality of its products by virtue of its nationality. Similarly, any testimony that foreign companies or manufacturers produce products that are lower quality. This type of testimony is simply intended to prejudice the jury and has no reasonable basis or probative value. This types of highly prejudicial

testimony is barred from use by Fed. R. Evid. 403. Pejoratives have no place in the courtroom. Any attempt by Plaintiffs use this type of testimony should be prohibited at trial, because it serves no legitimate purpose and only functions to prejudice the jury. A.I.A. Holdings, 2002 WL 31655287 (S.D.N.Y. 2002).

### 3. Any comment, testimony or documentary evidence stating that consumers and/or pharmacists believe product labels are supported by "scientific testing"

It is expected that Plaintiffs will attempt elicit witness testimony to indicate that pharmacists believe medical food product labels are supported by "scientific testing." This is based primarily upon the anticipated expert opinion of Plaintiffs' expert Hal Poret. Such comment and evidence should be excluded because Mr. Poret does not establish an authoritative definition for "scientific testing" nor does he establish that each survey participant was given a standard definition of "scientific testing" and therefore to use that phrase would cause confusion for the jury and is thus precluded by Fed. R. Evid. 403. (Poret Dep. Pg. 32:20, May 6, 2014 [D.E. 147-19]).

Plaintiffs will likely attempt to have Mr. Poret testify that 36.6% of the pharmacists he surveyed believe that scientific testing was done to support the claims on Virtus' products labels. (Poret Expert Report. Pg. 22). A survey is the correct method by which to introduce evidence of the collective belief of pharmacists regarding a certain topic. *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 420 (S.D.N.Y. 2013). However, the statement that pharmacists believe the label claims are supported by "scientific testing" is not allowed under the rules. Poret stated that the term "scientific testing" meant testing that would be "appropriate." (Poret Depo. Pg. 31:19-20). But when asked what testing is "appropriate" for a medical food, as opposed to the medical drugs that most pharmacists deal with on a daily basis, his answer was: "I have no way of knowing." (Poret Depo. Pg. 32:20). If Poret, the author of the survey, had "no way of knowing" what testing would be appropriate, certainly to admit this survey into evidence would only cause

confusion for the jury. Further, Mr. Poret clearly did not provide the survey participants with a uniform definition for "scientific testing" and therefore it cannot be assumed that each participant subscribed to the same definition. Thus, any remote probative value this reference to "scientific testing" could possibly have is vastly outweighed by the potential confusion it would cause to the jury. Fed. R. Evid. 403.

> ### 4. Any expert opinion testimony from lay witnesses where Plaintiffs have not provided a disclosure as is required by Fed. R. Civ. P. 26(a)(2)(C).

Plaintiffs may seek to introduce expert testimony from seven lay witnesses: Dale Scotten (expected to testify regarding the manufacturing and testing of Plaintiffs products); David Kronlage (expected to testify regarding pharmaceutical marketing and sales); Larry Lapila (expected to testify regarding the marketing and sales of generic pharmaceuticals); Marc Fluitt (expected to testify regarding pharmaceutical product distribution systems); Harold Koch (expected to testify regarding the development of Plaintiffs' products); Diane Nazar (expected to testify regarding the pharmaceutical product distribution system); and Judi Reidinger (expected to testify regarding the formulation, chemical makeup, manufacturing, and testing of the products at issue).

Parties must disclose the identity of any witness that may be used at trial to present evidence under Federal Rules of Evidence 702, 703, or 705. Fed. R. Civ. P. 26. It is true that combination fact/expert witnesses need not give a full expert report. Nevertheless, these combination witnesses are still required to provide a summary of the facts and opinions of the testimony they are expected to give and the basis for that testimony. *Id*. Here, Plaintiffs have provided the names and a brief summary of the testimony that may be given by each witness (Attached as "Exhibit 2"), but this summary fails to completely satisfy the requirement of the Rules. Such an error is only remedied by not allowing those witnesses to testify as stated in Fed. R. Civ. P. 37(c)(1). Because the

disclosure of expert reports is something to be taken seriously, the failure to disclose these reports must result in exclusion of these witnesses from testifying as experts. *Wong v. Regents of U. of California*, 410 F.3d 1052, 1060 (9th Cir. 2005). Indeed, the failure to comply with the rules must result in "severe sanctions and exclusions of evidence." *Id.*

Additionally, Plaintiffs may attempt to introduce testimony from their employees as to the damages (e.g. lost profits) Plaintiffs suffered. These employees are not qualified as lay experts, let alone experts, nor have any expert reports regarding this testimony been provided. Thus, this testimony too, must be excluded.

### 5. Any evidence, testimony or argument regarding alleged patient safety concerns with Virtus' products or the efficacy of Plaintiffs' products in treating certain medical conditions

Plaintiffs will likely seek to introduce evidence, through the testimony of Allen Jacob, regarding alleged safety hazards associated with Defendant's products and the efficacy of Plaintiffs' products in treating certain medical conditions such as diabetic neuropathy.

#### a. Any evidence, testimony or argument concerning alleged patient safety concerns with Virtus' products

Any testimony regarding safety concerns related to Virtus' products must be excluded. Such statements are highly prejudicial, have no probative value, and must be excluded under Fed. R. Evid. 403. Similar to the discussion above, when statements are highly prejudicial and only seek to inflame the passions of the jury or invoke sympathy, such statements must be excluded. *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, (LMM), 2002 WL 31655287 (S.D.N.Y. 2002); *Smithfield Foods, Inc. V. United Food and Commercial Workers Intern. Union*, 2008 WL 4610305 (E.D. Va. 2008). Further, even if the statements were proper opinion testimony, Jacobs does not have any personal knowledge or any qualifications that would give him the ability to introduce that testimony. He admittedly has little or no knowledge of how pharmacists deal with generics, nor does he even allow his patients to receive generics. (Decl. Jacobs ¶ 31). He could not possibly

have any personal knowledge of how patients react to generics because he writes on all every prescription "Do not substitute." (Decl. Jacobs ¶ 31). Thus, he had no knowledge of Virtus products or any generic product, and is not qualified to give any testimony regarding the safety of Virtus' products.

The Court should refuse to admit evidence or allow testimony that seeks only to appeal to the jury's emotions. *United States v. Thomas,* 49 F.3d 253, 258–59 (6th Cir.1995) (holding that evidence was unfairly prejudicial and as such inadmissible because it "appeal[ed] to the jury's emotions rather than intellect"). Any evidence or testimony by Plaintiffs regarding the quality of Virtus' products or the possibility that the products may pose a danger to patient safety is clearly a baseless emotional appeal. Therefore, this Court should refuse to allow Plaintiffs to introduce any such evidence or testimony.

*b. Any evidence, testimony or argument regarding the efficacy of Plaintiffs' products*

Jacobs' will likely testify about the efficacy of Plaintiffs' products in treating certain medical conditions such as diabetic neuropathy. However, Jacobs admittedly is not a biochemist; he is a podiatrist. (Depo. Jacobs Pg. 68:6; Dec. Jacobs ¶ 2). His practice is focused on diabetes, pathology, and neuropathies but he mostly sees bunions, hammer toes, heel spurs, etc., which are conditions not treated by L-Methylfolate or its related products. (Depo. Jacobs Pg. 5:2).

It would be a needless waste of the Court's time and confusing to the jury to allow Plaintiffs' to bolster their position by bringing in this witness to testify to the efficacy of their products in treating certain conditions. To do so would confuse the issues for the jury and mislead the jury into thinking this case is somehow about which product is better at treating certain diseases. Fed. R. Evid. 403. The "healing" properties of Plaintiffs' products are not at issue. Just as the negative comments discussed above, any attempt to bolster the reputation of Plaintiffs or their products has no bearing on this case and is simply an emotional appeal. The possibility that

Plaintiffs products may have some healthful benefits has no bearing on the cause of action brought by Plaintiffs regarding the accuracy of the label claims made by Virtus. (Second Amended Complaint ¶ 38—55).

Such irrelevant evidence is also inadmissible under Fed. R. Evid. 404. Any testimony or evidence seeking to bolster the reputation of Plaintiffs' products is improper character evidence and merely an emotional appeal that will mislead the jury and confuse the issues. *U.S. v. Daulton*, 266 Fed. Appx. 381, 385 (6th Cir. 2008) (unpublished). Jurors are to apply the law to the facts, and should not be presented with evidence that seeks to replace the jury's reliance on evidence with reliance on emotions. *United States v. Whittington,* 455 F.3d 736, 739–40 (6th Cir. 2006). Plaintiffs may not introduce good character evidence in an attempt to influence the jury to find in their favor. This character evidence is irrelevant and has no bearing on this case whatsoever.

This evidence and testimony should not be allowed because the any possible probative value is substantially outweighed by the danger of misleading the jury, wasting time, and confusing the issues *U.S. v. Davis*, 772 F.2d 1339, 1344 (7th Cir. 1985). Thus, this Court should exclude all references to either the alleged patient safety concerns with Virtus' products and any potential health benefits of Plaintiffs' products.

**6. Any evidence, testimony or argument regarding variances or errors made by Virtus' or its manufacturers which is unrelated to L-Methylfolate or the claims at issue.**

Plaintiffs may seek to introduce evidence of paperwork inaccuracies or elicit testimony that Virtus' products contain manufacturing variances or errors. As discussed above, this Court should bar Plaintiffs from introducing evidence that is irrelevant, potentially confusing to the jury, a waste of time, and seeking to appeal to the emotions of jurors. Fed. R. Evid. 401 and 403. First, these matters are irrelevant. The issue before this court is the accuracy of the labels on Virtus' products. Any possible relevancy of these alleged paperwork inaccuracies, or variances and errors is

substantially outweighed by the confusion, the needless waste of time, and the prejudice it would cause. Second, bringing in evidence of alleged errors or variances is a couched attempt to bring in prejudicial "bad character" evidence which is explicitly precluded by the Rules. Fed. R. Evid. 404(b). Such evidence is presumed inadmissible and may only be brought in if there is some "special probative value beyond mere relevance." *U.S. v. Frankhauser*, 80 F.3d 641, 648 (1st Cir. 1996). There is no probative value for this evidence and it will only seek to prejudice the jury against the Defendant. Finally, as discussed above, statements or evidence that only seeks to inflame the passions of the jurors or appeal to the emotions of the jury must be excluded. *Wilmington,* 455 F.3d at 739–40. Thus, this evidence should be excluded by the Court.

### 7. Any evidence, testimony or argument that Virtus' products do not meet the shelf-life claims made on the label.

Plaintiffs may seek to present evidence or elicit testimony at trial that Defendant Virtus' products do not meet the shelf-life claims made on the label. However, by the Plaintiffs' own expert witness' admission, these claims are baseless. Mr. Herbel's opinions concerning the stability (shelf-life) of Virtus' products is simply problematic. His expert report describes certain tests performed on Virtus products in May of 2013 followed by a second set of tests performed on the same lots performed in September and October of 2013, which purported to have lower results. (Herbel Expert Report at pp. 6-7) It is expected that Herbel will testify such testing indicates a degradation of Virtus' products and evidence that Virtus' expiration dates are false. However, at deposition, Herbel testified that BioScreen did not perform stability tests on the Virtus products; and, more importantly, that he could not offer an opinion as why the test results were different because there were too many variables that could have accounted for the difference in results. (Herbel II at p. 308). Such baseless accusations are not allowed by any witness, much less expert witnesses testifying about the highly complex chemical formulation of a vitamin. Fed. R. Evid.

602, 701, 702, and 703. Therefore, this Court should refuse to allow any evidence or testimony relating to the shelf-life of Virtus' products.

### 8. Any evidence, testimony or argument regarding Virtus' products having too much D-Methylfolate or too much l-Methyfolate.

Plaintiffs will likely seek to introduce evidence that Defendant Virtus' products contain too much of the "D" form of the compound and that they contain too much of the "L" form of the compound. However, neither of these claims were presented in the complaint or the second amended complaint and are therefore barred from being brought at this late stage in the litigation. Plaintiffs had the ability to raise either or both of these issues, but declined to do so. Things outside of the four corners of the Complaint are not properly before the Court. *Martini v. Gluth Bros Roofing Co., Inc.,* 2005 WL 1799543 (N.D. Ind. 2005). Additionally, Plaintiffs were specifically asked in the answers to interrogatories to identify all alleged false statements made by Virtus. Plaintiffs failed to include either of these statements at that point as well. Because Plaintiffs have repeatedly failed to raise either of these claims, they are thus barred form presenting evidence of these claims at trial.

### 9. Any evidence, testimony or argument regulatory complaints made against Virtus or its manufacturers.

As stated above, evidence is inadmissible if it seeks to "inflame the passions of the jury" and causes them to ignore the evidence and base their decision on emotions instead of facts. *United States v. Whittington,* 455 F.3d 736, 739–40 (6th Cir. 2006). By seeking to introduce evidence of Virtus' alleged "regulatory violations," Plaintiffs seek to cause the jury to use emotion instead of applying the law to the facts. When a juror hears the words "regulatory complaints" or "regulatory violations," the juror is being lead to believe Virtus has committed some type of wrong in the past and may use that baseless accusation to assume Virtus has

committed some type of wrong in this present case. Such evidence is baseless and is improper character evidence. Fed. R. Evid. 404(b). Thus, this court should exclude any reference to alleged regulatory complaints against Virtus.

### *10. Any evidence, testimony or argument regarding tests performed by third parties that have not been identified as experts in the matter or have not been admitted into evidence.*

Plaintiffs may seek to discuss "testing" purportedly done by third parties, through the testimony of Dr. Wendy Wang, but this evidence, or any mention of it, should be excluded. There has been no attempt to introduce this purported "testing" into evidence, nor is there any foundation by which to introduce the "testing" into evidence. This is hearsay evidence and there has been no testimony regarding any possible exception to the rule against hearsay; thus, it must be excluded. Fed. R. Evid. 803.

Further, even if there was an applicable hearsay exception, this testimony is unreliable and unauthenticated. The only testimony related to this "testing" is that of Dr. Wang, the President and Lab Director of ABC Testing, which admits the "testing" is unreliable. During her pre-trial deposition, Dr. Wang testified that her company only conducted "testing" according to the methodology provided by NHK. (Wang Depo. p. 37). Dr. Wang did not conduct any testing to validate the methodology, in fact, she specifically stated: "we do not claim this is a test with a valid method." (Wang Depo. p. 37:22-23). Such "testing" done without the proper validation is not reliable and should not be allowed to be presented to the jury. *United States v. Frazier*, 387 F.3d 1244, 1261. A proposed expert's testimony must be supported by appropriate validation based on what is known. *Id.* The expert must therefore be able to explain the basis of his opinion, and bald assurances of validity are insufficient. *Id.* Thus, this "testing" should be excluded from evidence.

### *11. Any evidence, testimony or argument regarding alleged reputational harm*

Plaintiffs will likely seek to introduce evidence that Virtus' has caused harm to the

Plaintiffs' reputation in the marketplace. First, it should be noted, this claim was not presented in the complaint or the second amended complaint and Plaintiffs are therefore barred from raising these allegations at this late stage in the litigation. Plaintiffs had the ability to allege this harm, but declined to do so. Things outside of the four corners of the Complaint are not properly before the Court. *Martini,* 2005 WL 1799543 (N.D. Ind. 2005). Second, even if Plaintiffs were allowed to raise these claims, there has been no evidence submitted to support these allegations. Such types of claims, seeking actual damages, must be supported by competent evidence. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974). No such evidence, however, has been or will be presented in this case.

Because Plaintiffs have failed to properly plead these reputation claims and have failed to show any evidence of actual harm to their reputation, they are thus barred form presenting evidence of these claims at trial.

### *12.  Any evidence, testimony or argument describing the contents of a document before it has been admitted into evidence.*

The rules of evidence require strict control over what evidence is allowed to enter the jury box. The Court "**must** conduct the trial in such a way that inadmissible evidence is not **suggested** to the jury by any means." Fed. R. Evid. 103(c) (emphasis added). Counsel is not permitted to testify at trial, and the only way to introduce evidence is by having a witness testify to its authenticity and lay the proper foundation. Fed. R. Evid. 901. Therefore, for Plaintiffs to read from an exhibit or to testify about what an exhibit shows before it has been admitted into evidence is improper and strictly prohibited by the Rules.

### *13. Any attempt by Plaintiffs to offer testimony or argument regarding Virtus' products, except the six lots tested for which Plaintiffs have produced evidence of testing.*

It should not be automatically assumed that all of Virtus' products fail to meet their respective label claims. It must be shown by a preponderance of the evidence. *Porous Media Corp.*

*v. Pall Corp.*, 110 F.3d 1329, 1332 (8th Cir. 1997). However, Plaintiffs are attempting to lighten that burden and establish a presumption that all of Virtus' products do not meet the label claims while only admitting into evidence testing done on six specific lots. Plaintiffs' expert Herbel is expected to testify as to tests performed on only six specific lots of Virtus L-Methylfolate products bearing lot numbers 1212035, 1212036, 1212038, DL-35, DL-36, and DL-73A, which Plaintiffs will attempt to use as evidence to show that all of the Virtus products do not meet label claims as to potency. (See Herbel report pp. 4-6 D.E. 136-33). There has been no expert testimony that these lots are characteristic of the entire body of Virtus products. In fact, the testimony has been just the opposite. Plaintiffs' own excerpt witness, Dr. Jacobs stated his testimony would only relate to the lot covered by the report presented to him by Plaintiffs' counsel and he could not "possibly comment on other lots" because he has "no idea if it is representative." (Depo. Jacobs Pg. 75-76). Therefore, this Court should limit the testimony to what can be shown by the evidence, the six lots that were actually tested, and refuse to allow Plaintiffs to create a presumption in order to lighten their burden of proof.

## **CONCLUSION**

Virtus respectfully requests that this Court enter an Order excluding all of the above mentioned evidentiary materials and granting all other such relief as is just and appropriate.

## **Certification Pursuant to Local Rule 7.1(a)(3)**

Undersigned counsel for Defendant certifies that Joseph P. Kenny, Esq., has conferred with counsel for Plaintiffs, Saul H. Perloff, Esq. and Katharyn M. Grant, Esq., in person regarding the

relief requested herein in a good-faith effort to resolve by agreement the issues raised in the foregoing Motion, but has not been able to resolve such issues with Plaintiffs' counsel.

Dated: July 18, 2014

*s/Stephen J. Wein*
STEPHEN J. WEIN, ESQUIRE; FBN: 212814
steve.wein@webercrabb.com
JOSEPH P. KENNY, ESQUIRE; FBN: 59996
joseph.kenny@webercrabb.com
WEBER, CRABB & WEIN, P.A.
5999 Central Avenue, Suite 203
St. Petersburg, FL 33710
(727) 828-9919
(727) 828-9924 (Fax)
*Co-Counsel for Defendant*

and

CHRISTOPHER PARADIES, ESQUIRE; FBN: 13014
cparadies@paradieslaw.com
Paradies Law, P.A.
4914 Joanne Kearney Blvd.
Tampa, FL 33619
(727) 433-8529
*Co-Counsel for Defendant*

and

BRETT B. BARTEL, ESQUIRE; *Pro Hac Vice*
bbartel@taylorenglish.com
W. SCOTT CREASMAN, ESQUIRE; *Pro Hac Vice*
screasman@taylorenglish.com
Taylor, English, Duma, LLP
1600 Parkwood Circle, Suite 400
Atlanta, GA 30339
(770) 434-6868
*Co-Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will send a notice of electronic filing

upon the following: **Saul H. Perloff, Esq.** (saul.perloff@nortonrosefulbright.com), **Katharyn A. Grant, Esq.** (katharyn.grant@nortonrosefulbright.com), **Robert L. Rouder, Esq.** (robert.rouder@nortonrosefulbright.com), and **Joseph A. Bourbois, Esq.**, (joseph.bourbois@nortonrosefulbright.com) Norton Rose Fulbright, L.L.P, 98 San Jacinto Boulevard, Suite 1100, Austin, TX 78701; **Laura Ganoza, Esq.** (lganoza@foley.com) and **Christina M. Kennedy, Esq.** (ckennedy@foley.com), Foley & Lardner LLP, One Biscayne Tower, Suite 1900, 2 S. Biscayne Blvd., Miami, FL 33131; and **Robert F. Vroom, Esq.** (rvroom@bpirx.com) Breckenridge Pharmaceutical, Inc. 60 East 42nd Street, Suite 5210, New York, NY 10165.

*s/Stephen J. Wein*
STEPHEN J. WEIN, ESQUIRE; FBN: 212814
steve.wein@webercrabb.com
JOSEPH P. KENNY, ESQUIRE; FBN: 59996
joseph.kenny@webercrabb.com
WEBER, CRABB & WEIN, P.A.
5999 Central Avenue, Suite 203
St. Petersburg, FL 33710
(727) 828-9919
(727) 828-9924 (Fax)
*Co-Counsel for Defendant*

and

CHRISTOPHER PARADIES, ESQUIRE; FBN: 13014
cparadies@paradieslaw.com
Paradies Law, P.A.
4914 Joanne Kearney Blvd.
Tampa, FL 33619
(727) 433-8529
*Co-Counsel for Defendant*

and

BRETT B. BARTEL, ESQUIRE; *Pro Hac Vice*
bbartel@taylorenglish.com
W. SCOTT CREASMAN, ESQUIRE; *Pro Hac Vice*
screasman@taylorenglish.com

17

Taylor, English, Duma, LLP
1600 Parkwood Circle, Suite 400
Atlanta, GA 30339
(770) 434-6868
*Co-Counsel for Defendant*