UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:12-cv-81202-Williams/Brannon

NESTLÉ HEALTH SCIENCE – PAMLAB, INC.
and BRECKENRIDGE PHARMACEUTICAL, INC.,

    Plaintiffs,

v.

VIRTUS PHARMACEUTICALS, LLC,

    Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT AS A MATTER OF LAW ON COUNT II,
CONTRIBUTORY FALSE ADVERTISING [D.E. 341]**

Plaintiffs Nestlé Health Science – Pamlab, Inc. ("Nestle") and Breckenridge Pharmaceutical, Inc. ("BPI") (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to Defendant Virtus Pharmaceuticals, LLC's ("Virtus") motion for judgment as a matter of law ("JMOL") on Plaintiffs' claim for contributory false advertising [D.E. 341]

## INTRODUCTION

Virtus is liable for contributory false advertising because it successfully induced industry databases, including First DataBank and Medi-Span, to widely disseminate via commercial speech false and misleading information that Virtus' products contain the same active L-methylfolate ingredient in the same amounts as Plaintiffs' products when they do not, and are "generic" versions of Plaintiffs' products, when they are not, to Plaintiffs' injury. Virtus does not challenge that Plaintiffs presented sufficient (and indeed overwhelming) evidence to demonstrate that Virtus (1) provided false and misleading information to the databases; (2) the databases distributed this false and misleading information to pharmacists and others; and (3) pharmacists relied on this information and substituted Virtus' products for Plaintiffs.

Virtus' JMOL motion on contributory false advertising instead is based on its assumption that *only* direct competitors may be liable for false advertising.  *See* D.E. 341 at 4 ("Plaintiffs have failed to demonstrate that they are in 'commercial competition' with the Industry Databases, and Plaintiffs therefore have no claim for direct liability against the Databases."). Virtus' argument fails under the U.S. Supreme Court's March 2014 ruling in *Lexmark Int'l, Inc. v. Static Control Components, Inc* ., 572 U.S. ___, 134 S. Ct. 1377, 1392 (2014) ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect only the false-advertiser's direct competitors.").  To the contrary:

> To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations. Static Control has adequately pleaded both elements.

*Id.* at 1395.  Here, Plaintiffs have suffered injuries to their commercial interest in sales proximately caused by the databases' false and misleading statements in commercial speech.  No more is needed, and Virtus' motion fails as a matter of law.

## ARGUMENT

### I. Virtus Is Liable For Contributory False Advertising Under *Inwood Labs*.

Virtus can and should be held vicariously liable for inducing a Lanham Act violation. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982).  *Inwood* involved somewhat similar facts to the instant case.  The plaintiff Ives Laboratory ("Ives") marketed the brand name prescription drug Cyclospasmol, a vasoldilator.  Defendant Premo Pharmaceuticals ("Premo"), a generic drug company, began marketing a generic version of the drug, cyclandelate, copying the capsules used by Ives for its brand version.  While Premo did not itself label its product "Cyclospasmol," dispensing pharmacists, who received both products in bulk and rebottled them using their own labels, allegedly labeled the generic version with the brand name.

*Id.* at 851. Addressing the generic drug companies' potential liability for the pharmacists' trademark infringement, the Court agreed with the courts below that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Id.* at 853. The Court continued:

> Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit.

*Id.* at 853-54; *see also Mini Maid Servs. Co. v. Maid Brigade Sys.,* 967 F.2d 1516, 1521-22 (11th Cir. 1992) (construing *Inwood* and holding that franchiser could be held liable for franchisee's infringement when it intentionally induced trademark violations or knowingly participated in the franchisee's infringement); *Societe Des Hotels v. Lasalle Hotel Operating,* 380 F.3d 126, 133 (2d Cir. 2004) (construing *Inwood* and reversing dismissal of contributory false advertising claim).

Plaintiffs' claim here is essentially identical to Merck's successful claim for contributory false advertising against Brookstone (a/k/a, "Acella") Pharmaceuticals. *See Merck Eprova AG v. Brookstone Pharmaceuticals, LLC*, 920 F. Supp. 2d 404 (S.D.N.Y. 2013). Acella, just like Virtus, had falsely advertised its "generic" folate products as containing "L-methylfolate," purportedly equivalent to Merck's Metafolin. And just as Virtus' false advertising did here, Acella's "false labeling prompted pharmaceutical databases to 'link' the cheaper Acella products to the more expensive Merck product, inducing pharmacies and others to believe that Acella's folate could be substituted for Merck's despite their different chemical compositions." *Id.* at 410 (describing allegations); *id*. at 415 (findings). After addressing Acella's liability for its own false advertising, the court also found Acella liable for contributory false advertising. *Id.* at 425.

The *Merck v. Brookstone* court first noted that "in order to prove that Acella engaged in contributory false advertising in violation of the Lanham Act, Merck must establish false advertising by the databases." *Id.* This element was easily met; "[t]he evidence at trial clearly demonstrated that Acella led the databases to make misleading claims regarding Xolafin and Xolafin–B's chemical composition." *Id.* Just as in the instant case,

> it has been well-established that Acella's intentionally misleading labels caused the databases to link as chemically equivalent Acella and Metafolin-containing products, a falsehood, and that this linkage caused the marketplace to treat the products as similar or, in some states, commanded their substitution. Further, Acella's success in persuading at least two of the major pharmaceutical databases to link its products with Merck products shows a significant penetration of the market.

*Id.* Based on these facts—identical to those in this case—the court found "that Acella intentionally induced the databases to falsely advertise and that Merck has prevailed on its contributory false advertising claim." *Id.*; *see also Merck Eprova AG v. Gnosis S.P.A.*, 901 F. sup. 2d 436, 456-57 (S.D.N.Y. 2012) ("Gnosis is liable to Merck for contributory false advertising" in case involving products falsely advertised as containing L-methylfolate "because its false use of the common name caused its distributors to also falsely advertise."), *aff'd*, *Merck Eprova AG v. Gnosis S.p.A.,* 2014 WL 3715078 (2d Cir. Jul. 29, 2014).

Virtus' conduct is essentially identical to that of Acella's in *Merck v. Brookstone*, and the same result—and liability—should therefore lie.

**II.     Under *Lexmark,* Plaintiffs Have Stated A Direct False Advertising Claim Against The Databases.**

Virtus sought to induce the databases, including First DataBank and Medi-Span, to link Virtus' products to Plaintiffs' products, and the databases in fact did link Virtus' products to Plaintiffs'. Just as Virtus' own representations on its labels and other advertisements were literally false and misleading, so the databases' representations that Virtus' products are

"generic" to Plaintiffs and contain the same L-methylfolate ingredient in the same amounts as Plaintiffs are also false and misleading. Virtus disregards these facts in favor of a cobbled together legal theory that because *only* direct competitors can be held liable for false advertising, a non-competitor's commercial speech – no matter how false – cannot constitute "advertising." D.E. 341 at 3-4. The case Virtus primarily relies upon for this argument, *Suntree Technologies, Inc. v. Ecosense International, Inc.*, 693 F.3d 1338 (11th Cir 2012), reached no such holding.

*Suntree* involved "baffle boxes," storm water treatment devices marketed by plaintiff Suntree Technologies and defendant Ecosense International. In 2008, the City of West Melbourne sought bids for a project, and named Suntree's product as the standard to be used. 693 F.3d at 1341 (requiring Suntree baffle boxes "or approved equal constructions details and specs"). Defendant Derrico Construction successfully bid on the project, listing Suntree as an intended supplier, but later used Ecosense's products after approval by the project's engineer. *Id.* at 1342. After the project was completed, a county engineer asked Ecosense to create a power point to train personnel on cleaning and maintenance for the installed baffle boxes. *Id.* Ecosense used photos of workers for the City of Rockledge, near Ecosense's office, as they maintained baffle boxes. Because both Ecosense and Suntree baffle boxes had been installed in the City of Rockledge, the power point included photos of both companies' baffle boxes. *Id.* Suntree then sued, alleging that the power point constituted false advertising, and that Ecosense was contributorily liable for Derrico's alleged infringement of Suntree's trademark. *Id.* at 1343.

The court rejected Suntree's claim for contributory infringement because the use of the name "Suntree" in Derrico's bidding did not itself infringe on Suntree's mark. *Id.* at 2345-46 ("Suntree failed to present any evidence that Derrico intended to confuse the City as to whose baffle boxes would be installed"). The court also affirmed dismissal of the separate claim for

false advertising against Ecosense based on the power point and a brochure with similar content, reasoning that it had not constituted "commercial advertising."  Quoting a decision from the same district which more recently issued both the *Brookstone* and *Gnosis* rulings in favor of Merck, the *Suntree* court stated that:

> In order for representations to constitute "commercial advertising or promotion" under Section [1125(a)], they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. ***While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations*** (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* at 1349 (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535-56 (S.D.N.Y. 1994) (emphasis added)).  Notably, Virtus' brief fails to acknowledge the highlighted language above, and instead focused on the second element.  *See* D.E. at 3.  But this element was immaterial to the *Suntree* court's ruling.  Suntree and Ecosense in fact were in competition, and the accused power point was not "advertising" because it was not intended to influence consumers.  "The record shows that the maintenance presentation was created at the request of an existing client. It was not created to promote or advertise Ecosense's products, but for training customers who had already purchased the product."  693 F.3d at 1349.

Contrary to Virtus' attempt to gloss over the databases' *commercial* role, D.E. 3414, the "product" the databases sell is information.  Trial Tr. (Aug. 13, 2014) at 52-53 ("The databases publish information.  So it is not public information, but people who want to buy a subscription to the databases will have access to their information.").  By sharp contrast to the cleaning and maintenance power point found not to be "advertising" in *Suntree,* the information disseminated by the databases influences customers and drives sales of Virtus' products:

> Q.    What happens because of that linkage.
> [sustained objection to response]

>   Q.  Does it result in the Virtus Product being substituted?
>   A.  Yes.
>   Q.  What does that mean in terms of what product the patient gets?
>   A.  It will be based off what the pharmacist chooses to give the patient. If it is a linked product, pharmacists can choose to provide the brand or the generic, which in the database, says they are identical. And the pharmacy can offer that choice to the patient, or choose themselves in some states.

Trial Tr. (Aug. 13, 2014) at 59-60.

Virtus also cites to the unpublished, out-of-district decision in *Kaufman, Englett, & Lynd, PLLC v. Better Business Bureau of Centr. Fla., Inc.*, Case No. 6:12-cv-31-ORL-28KRS, 2013 WL 524931 (M.D. Fla. Feb. 13, 2013), which dismissed false advertising claims by a law firm unhappy with the Better Business Bureau's ratings of the firm. To the extent, however, that *Kaufman* held that *only* advertising by a direct competitor is actionable under the Lanham Act, *id.* *3-4, that holding cannot survive the Supreme Court's subsequent holding in *Lexmark*.

Lexmark and Static Controls, were not direct competitors. Lexmark manufactured and distributed laser printers and toner cartridges for those printers, while Static Controls developed and sold to toner cartridge refurbishers a replacement microchip that would allow them to refurbish and resell Lexmark toner cartridges. *Lexmark,* 134 S. Ct. at 1383-84. Lexmark sued for alleged copyright violations, and Static Controls counterclaimed for false advertising based on Lexmark's alleged representations to its own customers (who were *not* Static Controls' customers) that it was illegal to sell refurbished cartridges. *Id.* at 1384. The district court dismissed Static Control's false advertising claim, holding that because it was *not* a direct competitor, it lacked "prudential standing." The Sixth Circuit reversed, holding Static Control enjoyed prudential standing under one of three competing tests. *Id.* at 1385. Affirming this reversal, the Supreme Court rejected the "prudential standing" analysis entirely, and instead simply "ask[ed] whether Static Control has a cause of action under the statute." *Id.* at 1387.

Static Control had a false advertising cause of action because it fell within the "zone of interests" of § 43(a) of the Lanham Act, and because its injuries had been proximately caused by Lexmark's alleged false advertising. 134 S. Ct. at 1389 ("to come within the zone of interests in a suit for false advertising under §1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."); *id.* at 1391 ("a plaintiff suing under §1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff.").

Here, Plaintiffs also fall within § 43(a)'s zone of interest with respect to the databases, which have falsely linked Plaintiffs' products to Virtus' inferior and mislabeled products, Plaintiffs' loss of sales has been proximately caused by the databases' dissemination of false and misleading information. Critically, Plaintiffs need not allege a "classic Lanham Act false-advertising claim" between direct competitors, because a "diversion of sales to a direct competitor" is *not* "the only type of injury cognizable under §1125(a)." *Id.* at 1393. Even where the parties are not direct competitors,"[w]hen a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff 's injury flows directly from the audience's belief in the disparaging statements." *Id.*

The element of direct competition in the *Gordon* test, though cited as *dicta* by *Suntree*, is inapt under *Lexmark's* express holding. Direct competition is *not* required to state a claim for false advertising under the Lanham Act, and cannot be shoe-horned in by rigidly defining "advertisements" to include only commercial speech by competitors. Plaintiffs have proven all of the elements of direct false advertising by the databases, and Virtus is liable for its contributory false advertising.

## **CONCLUSION**

Plaintiffs have presented ample evidence to support a finding of contributory false advertising. Virtus' JMOL must be denied.

Dated: August 21, 2014

Respectfully submitted,

By: *s/Laura Ganoza*
**Laura Ganoza**
Florida Bar No. 118532
lganoza@foley.com
**Christina M. Kennedy**
Florida Bar No. 58242
ckennedy@foley.com
**FOLEY & LARDNER LLP**
2 South Biscayne Boulevard, Suite 1900
Miami, Florida 33131
Telephone (305) 482-8400

**Saul H. Perloff (***Pro Hac Vice***)**
saul.perloff@nortonrosefulbright.com
**Katharyn A. Grant (***Pro Hac Vice***)**
katharyn.grant@nortonrosefulbright.com
**Joseph A. Bourbois** (*Pro Hac Vice*)
joseph.bourbois@nortonrosefulbright.com
**Fulbright & Jaworski LLP**
300 Convent Street, Suite 2100
San Antonio, Texas 78205
Telephone (210) 224-5575

**Robert F. Vroom (***Pro Hac Vice***)**
rvroom@bpirx.com
**Breckenridge Pharmaceutical, Inc.**
60 E. 42nd Street, Suite 5210
New York, New York 10165
Telephone (646) 448-1309

**Robert L. Rouder (***Pro Hac Vice***)**
robert.rouder@nortonrosefulbright.com
**Fulbright & Jaworski LLP**
98 San Jacinto Boulevard Ste 1100
Austin, Texas 78701-4255
Telephone  (512) 474-5201
*Attorneys for Plaintiffs*
**Nestlé Health Science – Pamlab, Inc.
and Breckenridge Pharmaceutical, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON COUNT II, CONTRIBUTORY FALSE ADVERTISING [D.E. 341]** to be electronically filed with the Clerk of the Court using the ECF system for the Southern District of Florida on this the 21st day of August, 2014 which will send electronic notification of such filing, and served by email in compliance with FED. R. CIV. P. 5(b)(2)(E), to the following:

Stephen J. Wein
Joseph P. Kenney
**Weber, Crabb & Wein, P.A.**
5999 Central Avenue, Suite 203
St. Petersburg, Florida 33710
steve.wein@webercrabb.com
joseph.kenny@webercrabb.com

W. Scott Creasman
Brett B. Bartel
**Taylor, English, Duma, LLP**
1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
screasman@taylorenglish.com
bbartel@taylorenglish.com

Christopher Paradies
**Paradies Law P.A.**
4914 Joanne Kearney Blvd.
Tampa, Florida 33619
cparadies@paradieslaw.com

Janet T. Munn
**Rasco Klock Perez Nieto**
283 Catalonia Avenue
Suite 200
Coral Gables, FL 33134
jmunn@rascoklock.com

Jordan M. Heinz
Megan M. New
**Kirkland & Ellis LLP**
300 North LaSalle
Chicago, IL 60654
jordan.heinz@kirkland.com
megan.new@kirkland.com

Christopher T. Jagoe
Jared M. Barcenas
Oliver C. Bennett
Stephen J. Elkind
**Kirkland & Ellis LLP**
601 Lexington Avenue
New York, NY 10022
christopher.jagoe@kirkland.com
jared.barcenas@kirkland.com
oliver.bennett@kirkland.com
stephen.elkind@kirkland.com

    *s/Laura Ganoza*
    Laura Ganoza
    *Attorneys of Plaintiffs*